JARED JERNEGAN *vs.* SAMUEL OSBORN, JR., & others.

Bristol.    October 28, 1891. — January 6, 1892.

Present: ALLEN, HOLMES, MORTON, & BARKER, JJ.

*Claim against United States — Gratuity — Assignment.*

A vessel and its crew, during a whaling voyage which terminated on August 17, 1872, rendered certain services in rescuing seamen in the Arctic seas, and a loss thereby resulted to the owners. Subsequently one of the owners conveyed all his interest in the ship to another owner, and afterwards, in May, 1874, assigned his entire interest in the voyage, including in terms claims against the United States, to the same owner. By act of Congress of February 21, 1891, a sum of money was directed to be paid to the owners of the vessel to compensate them for such loss and such services, upon receipt of which they were to give a full discharge of all claims, equitable or otherwise, which they had or thought they had against the United States on account thereof. *Held,* that the assignment of May, 1874, included the assignor's interest in the amount subsequently awarded by the United States to the owners of the vessel; and that the assignment was not invalid under the U. S. Rev. Sts. § 3477.

Whether a claim presented by the owners of a vessel against the government of the United States for losses sustained and services rendered in rescuing seamen in the Arctic seas is in any event such a claim as comes within the provisions of the U. S. Rev. Sts. § 3477, *quære.*

BILL IN EQUITY, filed in the Superior Court, by Jared Jernegan, against Samuel Osborn, Jr., a part owner of the whaling ship Europa, and against Joseph A. Beauvais and the Citizens' National Bank.

The bill alleged, that during a voyage of the Europa, which terminated on August 17, 1872, the owners thereof sustained certain losses by reason of services rendered by the ship in assisting in the rescue of nine hundred seamen in the Arctic seas; that during the whole of the voyage the plaintiff was the owner of one sixteenth part of the vessel; that on August 28, 1872, the plaintiff sold his interest to Osborn, by a bill of sale duly executed, and on May 22, 1874, further sold to Osborn, by an instrument or assignment in writing signed by the plaintiff, all his interest in the voyage, including " any claims by the owners of said Europa against the United States government"; that by an act of Congress of the United States, approved February 21, 1891, an award of the sum of $33,889.16 was made to the owners of the vessel, in full compensation for losses sustained

and services rendered as above mentioned ; that this act further provided that this money should be paid to the owners, for themselves and the officers and crew of the vessel, in " proportion to their respective lays, and in the same manner as the ordinary earnings from the said cruise would have been distributed," and that the owners should for all interested give " a full discharge of all claims, equitable or otherwise, which they have, or think they in any way have, against the United States, on account of the aforesaid losses and services " ; that the money was paid over to the defendant Osborn, as managing owner and agent of the vessel, on or about March 3, 1891, and by him deposited in part with the defendants Beauvais and the Citizens' National Bank.

The bill further set forth the provisions of § 3477 of the Revised Statutes of the United States, and alleged that the plaintiff's assignment of May 22, 1874, was null and void, in not having been executed conformably thereto ; and that the plaintiff was one of the owners referred to in the act of Congress, to whom the award was made.

The prayer was for an accounting and for the appointment of a receiver, and that the receiver be empowered to pay over to the plaintiff the sum due him ; and that the defendants be enjoined from making any disposition of the funds until the further order of the court.

The defendants demurred to the bill on the grounds : (1) that the plaintiff had no title in the subject matter, and had not stated a case that entitled him to discovery or relief ; (2) that the plaintiff's interest in the award, if any, was as a partner in the voyage, and could only be reached by a bill to settle the partnership affairs, and that the plaintiff had released the defendant from rendering an account ; (3) that the plaintiff, by his own allegations, was not at the date of the bill one of the owners referred to in the act.

*Braley*, J. sustained the demurrer ; and the plaintiff appealed to this court.

*A. M. Goodspeed*, for the plaintiff.

*C. W. Clifford*, for the defendant Osborn.

MORTON, J. In the view which we take of this case, it is not necessary to consider whether the award would have been dis-

tributable among the owners of the ship as partners in the voyage, or as owners of the ship. We do not think the plaintiff can maintain his bill on either ground. He conveyed all his interest in the ship to the defendant in August, 1872. He also conveyed to the defendant all his interest of every description in the voyage, including claims against the United States, in May, 1874. This conveyance was, in the most general terms, of all claims growing out of his ownership in the voyage, and is said in the instrument to be " a compromise sale and settlement of all matters pertaining to ship Europa." As to this conveyance the plaintiff says, in the first place, that the amount awarded by Congress to the owners of the Europa was a gratuity or donation, in which the plaintiff could, in the nature of things, have no assignable interest, and, in the next place, that the assignment was void under the provisions of the U. S. Rev. Sts. § 3477.

It may be, as the plaintiff insists, that the owners of the Europa had no legal or equitable claim upon the United States for the services of their ship and crew in rescuing seamen in the Arctic seas, or for the losses which they sustained thereby. It is evident, however, that they presented a claim to Congress for compensation. The assignment speaks of claims upon the United States as one of the things transferred, and no question is made about this being the only claim against the United States which the owners of the ship had. Congress recognized the claim, and in February, 1891, passed an act directing the payment of a certain sum to the owners, not as a donation or gratuity, but as compensation for losses sustained and services rendered in the rescue. It also provided in the act, that, upon the receipt of the money, the owners should give a full discharge of all claims, equitable or otherwise, which they had, or in any way thought they had, against the United States on account of said losses and services. Congress having thus treated as compensation the amount paid, and having recognized as equitable, to some extent at least, the claim made by the owners, we do not think the plaintiff can rightfully insist now that the sum paid was a gratuity or donation, and that his assignment passed no interest in it. Even if it was a donation or gratuity, it is possible that it might have passed under the broad language of the conveyance of May, 1874. *Kingsbury* v.

*Burrill,* 151 Mass. 199.　So far as the cases of *Heard* v. *Sturgis,* 146 Mass. 545, and *Newell* v. *West,* 149 Mass. 520, treat awards under statutes of the United States respecting Alabama Claims as gratuities, they must be regarded as overruled by the Supreme Court of the United States.　*Williams* v. *Heard,* 140 U. S. 529.

The claim of the plaintiff that the assignment is invalid under § 3477 of the U. S. Rev. Sts., would seem to derive some support from *Newell* v. *West, ubi supra.*　But in that case the court relied in the main for this point upon *Spofford* v. *Kirk,* 97 U. S. 484.　The statute has since been under consideration by the Supreme Court of the United States in other cases.　*Goodman* v. *Niblack,* 102 U. S. 556.　*Bailey* v. *United States,* 109 U. S. 432.　*Hobbs* v. *McLean,* 117 U. S. 567.　*Freedman's Savings & Trust Co.* v. *Shepherd,* 127 U. S. 494.　In *Goodman* v. *Niblack,* the court says that there is no doubt that the sole purpose of the statute was to protect the government, and not the parties to the assignment.　This language is cited with approval in *Bailey* v. *United States,* and the construction thus given to the statute is further upheld in *Hobbs* v. *McLean,* and more strongly still in the last reported case which deals with the subject, viz. *Freedman's Savings & Trust Co.* v. *Shepherd.* It is also said in *Goodman* v. *Niblack,* that the mischiefs which the statute was designed to prevent were two: first, the embarrassment to which the government might be subjected by having several persons instead of one perhaps to deal with, and by the introduction of strangers to the transaction ; and, secondly, the introduction into the prosecution of claims, often speculative and desperate, before Congress and the departments, of the combinations and influences that might result from multiplying the number of persons interested in them as owners. None of these considerations affect the present case.　The government has paid over the money without objection to the defendant Osborn, as agent and managing owner of the Europa. The assignment by the plaintiff to him of his interest in the claim was for the purpose and as a part of a settlement between them of all matters relating to the ship and voyage. Without undertaking to say that an assignor might not, under some circumstances, before the allowance of the claim, disregard

his assignment, we think the plaintiff cannot be permitted to do it in this case.

It is to be said further, that, although the sum appropriated by Congress, and paid to the defendant Osborn, cannot be properly described as a donation or gratuity, it is very doubtful whether the claim which was presented by the owners, and which finally was recognized and paid by Congress, came within the provisions of § 3477. See *Hobbs* v. *McLean*, 117 U. S. 567, 575.

*Decree affirmed.*