**PULLEN v. MORGENTHAU, Director General of Railroads.**

No. 23.

Circuit Court of Appeals, Second Circuit.

Nov. 5, 1934.

Burlingham, Veeder, Clark & Hupper, of New York City (Chauncey I. Clark and Eugene Underwood, both of New York City, of counsel), for appellant.

Alexander, Ash & Jones, of New York City (Edward Ash and Max Taylor, both of New York City, of counsel), for appellee.

Before MANTON, L. HAND, and SWAN, Circuit Judges.

SWAN, Circuit Judge.

On May 12, 1921, New Jersey Shipbuilding & Dredging Company filed its libel against the Director General of Railroads to recover for damage to its drill scow caused by a car float in tow of a Pennsylvania Railroad tug. The collision occurred in the East River on December 14, 1919, which was during the period when the Pennsylvania Railroad was being operated by the Director General of Railroads pursuant to the Federal Control Act (40 Stat. 451). After trial, an interlocutory decree was entered holding the respondent solely at fault. On the reference

to ascertain damages, it appeared that the claim of the original libelant had been assigned to Stella Pullen, and a motion was granted to require the libel to be amended and the suit to be prosecuted in the name of the real party in interest. Pursuant to this order, Stella Pullen filed her libel as assignee on March 19, 1932. Thereafter the respondent moved to dismiss on the ground that section 3477 of the Revised Statutes (31 USCA § 203) forbids suit by an assignee of a claim against the United States, and on the further ground that the suit was not brought within the one-year period of limitation prescribed by section 5 of the Suits in Admiralty Act for causes of action which arose prior to its passage on March 9, 1920, 41 Stat. 526 (46 USCA § 745). This motion being denied, the suit proceeded to the final decree, from which this appeal is taken.

In support of his contention that the suit cannot be maintained by an assignee, the appellant argues that this is a suit against the United States, and that R. S. § 3477 (31 USCA § 203), declares void the assignment of any claim against the United States before the issuance of a warrant for the payment thereof. While there are numerous decisions of the Supreme Court from which it may be inferred that a suit by or against the Director General of Railroads is a suit by or against the United States (see Dahn v. Davis, 258 U. S. 421, 42 S. Ct. 320, 66 L. Ed. 696; Dupont de Nemours & Co. v. Davis, 264 U. S. 456, 44 S. Ct. 364, 68 L. Ed. 788; Missouri Pac. R. Co. v. Ault, 256 U. S. 554, 41 S. Ct. 593, 65 L. Ed. 1087; Standard Oil Co. v. Southern Pacific Co., 268 U. S. 146, 45 S. Ct. 465, 69 L. Ed. 890), that court has never decided that section 3477 forbids assignment of a claim against the Director General. Lower federal courts and at least two state courts have held that it does not. Parrington v. Davis, 285 F. 741 (D. C. Or.); Empire Refining Co. v. Davis, 6 F.(2d) 305 (D. C. E. D. Okl.); Morgan v. Hines, 65 Mont. 306, 211 P. 778; Weiss v. Davis, Director General of Railroads, 250 Mass. 12, 144 N. E. 765 (reversed on other grounds in Mellon v. Weiss, 270 U. S. 565, 46 S. Ct. 378, 70 L. Ed. 736). These decisions rest upon section 10 of the Federal Control Act (40 Stat. 456), which expressly provides that "in any action at law or suit in equity against the carrier, no defense shall be made thereto upon the ground that the carrier is an instrumentality or agency of the Federal Government." The plain purpose of section 10, as pointed out in Missouri Pac. R. Co. v. Ault, 256 U. S. 554, 559, 41 S. Ct. 593, 65 L. Ed. 1087, was

to preserve to the general public the rights and remedies against common carriers which were enjoyed at the time the railroads were taken over by the President, except in so far as such rights or remedies might interfere with the needs of federal operation. Moreover, it is highly significant that in Richmond Screw Anchor Co. v. United States, 275 U. S. 331, 341, 48 S. Ct. 194, 72 L. Ed. 303, the Supreme Court cited the Parrington Case in support of the statement that exceptions to the general language of section 3477 have been recognized because not within the evil at which the statute aimed.

But the appellant contends that, even if the privilege of assigning such a claim existed under the Federal Control Act, it was lost after the enactment of section 206 of the Transportation Act of 1920 (41 Stat. 456, 461, see 49 USCA § 74), because that act does not contain the above-quoted provision of section 10 of the Federal Control Act. Said section 206(a) reads as follows:

"Actions at law, suits in equity and proceedings in admiralty, based on causes of action arising out of the possession, use, or operation by the President of the railroad or system of transportation of any carrier (under the provisions of the Federal Control Act, or of the Act of August 29, 1916) of such character as prior to Federal control could have been brought against such carrier, may, after the termination of Federal control, be brought against an agent designated by the President for such purpose. * * * Such actions, suits, or proceedings may, within the periods of limitation now prescribed by State or Federal statutes but not later than two years from the date of the passage of this Act, be brought in any court which but for Federal control would have had jurisdiction of the cause of action had it arisen against such carrier."

It seems to us wholly inconceivable that by this section Congress intended to change the law as to the assignability of claims arising out of the operation of carriers during the period of federal control. Its purpose was to change the procedure for enforcing such claims, not to change the incidents of the claims themselves. The railroads became agencies or instrumentalities of the United States when the President took possession of them. In spite of that, they were to be sued as though they were not; the United States laid aside its sovereign immunity as to them, as expressly stated in section 10 of the Federal Control Act. After possession terminated, the United States still permitted itself to be sued. To say that it intended to resume

sovereign immunity with respect to the assignability of the claim and to forbid suit by the assignee, while still submitting itself to suit by the assignor, is against every probability, and is not required by the statutory language. No good reason has been advanced and no authority cited to support such a construction. It was rejected in Empire Refining Co. v. Davis, 6 F.(2d) 305 (D. C. E. D. Okl.), and in the court below without opinion. We regard the decision as correct. Section 206 kept alive causes of action which had arisen during the period of federal control; since the defense would have failed under the former act, it cannot prevail under the latter.

The appellant's second contention presents the question whether the libel was timely brought. It is argued that the Suits in Admiralty Act, passed on March 9, 1920 (41. Stat. 525), 46 USCA § 741 et seq., repealed the limitation with respect to proceedings in admiralty contained in section 206 of the Transportation Act passed on February 28, 1920 (41 Stat. 456). Verbally the suit at bar might seem to fall within the Suits in Admiralty Act; the Pennsylvania tug was a vessel "in the possession of" or "operated by or for" the United States. But section 206 of the Transportation Act mentioned specifically proceedings in admiralty based on causes of action arising out of the federal operation of railroads. It dealt with such causes of action in all forums, and all had the same period of limitation. It seems incredible that nine days later Congress meant, by enacting a statute dealing generally with suits in admiralty against the United States, to upset the symmetry of its original plan regarding causes of action arising out of federal control of carriers. It is elementary that repeals by implication are not favored, and particularly is this true where the prior statute relates to a particular class or subject and the later act is general. Petri v. F. E. Creelman Lumber Co., 199 U. S. 487, 497, 26 S. Ct. 133, 50 L. Ed. 281; United States v. Burroughs, 289 U. S. 159, 164, 53 S. Ct. 574, 77 L. Ed. 1096. Where both laws are passed at the same session, the presumption against implied repeal is all the stronger. See Lewis' Southerland, Statutory Construction (2d Ed.) § 268 at p. 513; Smith v. People, 47 N. Y. 330, 339; Cleveland, C., C. & St. L. R. Co. v. Blind, 182 Ind. 398, 105 N. E. 483; State v. Rotwitt, 17 Mont. 41, 41 P. 1004. No authority holding that a suit against the Director General must be brought under the Suits in Admiralty Act has been brought to our attention, and it has been

common practice to bring them under the Transportation Act of 1920. See New Jersey Shipbuilding & Dredging Co. v. Davis, 11 F.(2d) 994 (D. C. S. D. N. Y.). The contention that the libel was filed too late cannot prevail.

Accordingly, the decree is affirmed.